IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARIEN HOUSER** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 22-2730** |
| **TODD FAUBERT, JOSHUA WRIGHT,** | : | |
| **SHANNON BEAN and JAMIE** | : | |
| **SORBER** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                             **November 20, 2023**

      The incarcerated Darien Houser pro se sues SCI-Phoenix Unit Manager Todd Faubert, Corrections Counselor Joshua Wright, employment Coordinator Shannon Bean, and Superintendent Jamie Sorber for violating his First Amendment rights by denying him a job at SCI-Phoenix in retaliation for objecting during a March 2020 class action fairness hearing related to conditions of confinement. He sues the state actors in their individual and official capacities. The state actors move to partially dismiss arguing Mr. Houser cannot proceed on his claims against them in their official capacities and has now twice failed to plead Coordinator Bean's and Superintendent Sorber's personal involvement in alleged retaliation. We agree with the four state actors. We dismiss the official capacity claims under the Eleventh Amendment. We dismiss the claims against Coordinator Bean and Superintendent Sorber. Mr. Houser will now proceed on his First Amendment retaliation claim against Unit Manager Faubert and Counselor Wright.

**I.**    **Alleged pro se facts.**

      Construing the incarcerated Darien Houser's allegations and attached documents, it appears the Commonwealth housed Mr. Houser at SCI-Greene in 2019.[1] Mr. Houser had a job in the Religious Services department at SCI-Greene in October 2019.[2]

The Department of Corrections transferred Mr. Houser to SCI-Phoenix in January 2020.[3] Mr. Houser sought employment at SCI-Phoenix in the Religious Services department like the employment he had at SCI-Greene.[4] An unidentified staff member responded SCI Phoenix did not then—January 27, 2020—have an employment position for chaplaincy workers in the unit to which Mr. Houser is assigned.[5]

Mr. Houser testified at the fairness hearing on a proposed class action settlement on March 16, 2020 pending in the *Reid* case.[6] He testified SCI-Greene offers no religious services and no employment opportunities for capital case prisoners, unidentified persons denied him employment for months, and Unit Manager Faubert and Counselor Wright told him there are no available jobs at SCI-Phoenix even though jobs are available.[7] The Facility hired, fired, and rehired other incarcerated persons on the same block and unit while he sought employment at SCI-Phoenix.[8]

The state actors then began retaliating against him. The state actors denied him employment and the SCI-Phoenix medical department assigned him to sedentary work from March 27, 2020 through September 14, 2021.[9]

***Manager Faubert and Counselor Wright's alleged retaliatory conduct.***

Unit Manager Faubert and Counselor Wright denied Mr. Houser employment and told him there were no available jobs at SCI-Phoenix even though jobs were available.[10] Unit Manager Faubert denied him employment in retaliation for objecting as a witness in the class action fairness hearing and for filing grievances.[11] Unit Manager Faubert removed his requests for employment from the mail; lied about the availability of employment; lied to Mr. Houser's Federal Defender who called to discuss Mr. Houser's employment; failed to respond to Mr. Houser's request to work as a "floor person" cleaning and stripping floors; put medical restrictions on Mr. Houser to prevent

2

his employment; and denied him jobs in the Activities Department, Religious Services, Commissary, as a porter, and in the Medical Department.[12]

Unit Manager Faubert and Counselor Wright failed to respond to his complaint about damage to his clothes by the laundry room and Unit Manager Faubert denied his request to move to another housing unit and did not respond satisfactorily to Mr. Houser's complaint about access to cable television.[13]

### Coordinator Bean's alleged retaliatory conduct.

Mr. Houser forwarded requests for employment to Coordinator Shannon Bean but she either did not answer him or forwarded his requests to Unit Manager Faubert.[14] Coordinator Bean did not help him secure a job, and instead acquiesced to Unit Manager Faubert's retaliatory scheme.[15]

On May 10, 2020, Mr. Houser submitted a request for employment.[16] Coordinator Bean responded by directing him to speak with Unit Manager Faubert and noting medical restrictions for his sedentary work and his placement on a wait list for "block work."[17]

On March 31, 2021, Coordinator Bean responded to Mr. Houser's request for employment by telling him all work assignments are filled and directing him to Unit Manager Faubert.[18]

On April 19, 2021, Coordinator Bean responded to Mr. Houser's request for employment as a porter, telling him the porter position is "in a future later stage" even though a porter position became available in December 2020.[19]

On July 13, 2021, Coordinator Bean responded to Mr. Houser's request for a position at a higher pay rate.[20] Coordinator Bean told Mr. Houser his pay rate would remain the same if he changed jobs and directed him to Unit Manager Faubert.[21] He alleges Coordinator Bean placed him on "GLP idle Pay."[22]

*Superintendent Sorber's alleged retaliatory conduct.*

Superintendent Sorber acquiesced to Unit Manager Faubert and Counselor Wright's retaliatory conduct and failed to address Mr. Houser's grievances.[23] Mr. Houser attempted to speak with Superintendent Sorber at an unpleaded time while on his housing unit but no job resulted despite Superintendent Sorber's assurances Unit Manager Faubert "has to give [Mr. Houser] a job."[24]

Mr. Houser's Federal Defender called to speak with Superintendent Sorber at an unpleaded time, but the call rerouted to Unit Manager Faubert.[25] Mr. Houser does not allege how this conduct constitutes a constitutional violation.

Mr. Houser complained about his damaged clothing to Superintendent Sorber on May 17, 2020 but the Superintendent did not respond.[26]

On June 17, 2020, Mr. Houser sent Superintendent Sorber a letter detailing his attempts to obtain employment.[27] Superintendent Sorber "did nothing" and acquiesced to "fellow workers," including Unit Manager Faubert and Counselor Wright.[28] Mr. Houser filed grievances against Superintendent Sorber in July 2020 complaining about his housing assignment and employment applications.[29] Superintendent Sorber responded by referring Mr. Houser to Unit Manager Faubert.[30]

**II.   Analysis**

Congress, through section 1983, allows private citizens to bring an action for violations of federal law committed by state actors.[31] Congress provides a mechanism for enforcing individual rights secured by the Constitution or federal laws.[32] To state a claim under section 1983, Mr. Houser must allege a person, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States.[33] Mr. Houser alleges the four state actors working at

4

SCI-Phoenix denied him employment at SCI-Phoenix in retaliation for exercising his First Amendment right to testify at the fairness hearing in the *Reid* class action and for filing grievances.

The Commonwealth now moves to dismiss part of the claims against the four state actors arguing: (1) the Eleventh Amendment bars Mr. Houser's official capacity claims and Defendants are not "persons" subject to suit under section 1983; and (2) Mr. Hauser fails to allege the personal involvement of Superintendent Sorber and Coordinator Bean sufficient to maintain claims against them in their individual capacity.[34] The Commonwealth does ***not*** move to dismiss the individual capacity claims against Unit Manager Faubert and Counselor Wright. Mr. Houser did not respond to the Commonwealth's Motion to dismiss.

A complaint containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" meets the Rule 12(b)(6) standard.[35] We are directed by our Court of Appeals to be "mindful of our 'obligation to liberally construe a *pro se* litigant's pleadings'… particularly where the *pro se* litigant is imprisoned."[36] We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[37] However "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules – they must abide by the same rules that apply to all other litigants."[38]

### A. We earlier dismissed claims against Defendants in their official capacities with prejudice.

Mr. Houser earlier consented to dismiss his official capacity claims against the Defendants and Judge Robreno's July 28, 2023 Order dismissed with prejudice claims against Unit Manager Faubert and Counselor Wright in their official capacities.[39] Mr. Houser's amended complaint asserts he seeks damages from Defendants "***in their official individual capacity***."[40]

We are unsure what Mr. Houser means by styling his claims against the Defendants "in their official individual capacity." But we dismiss those claims with prejudice to the extent Mr. Houser intended to sue Defendants in their official capacity.

Eleventh Amendment immunity bars actions for retroactive relief against Pennsylvania Department of Corrections employees Unit Manager Faubert, Counselor Wright, Coordinator Bean, and Superintendent Sorber acting in their official capacities.[41] "The Pennsylvania Department of Corrections is a state instrumentality, and its officials are state agents."[42] Pennsylvania's General Assembly did not waive its sovereign immunity with regard to the claims asserted here and Congress did not abrogate Eleventh Amendment immunity under section 1983.[43] Mr. Houser's official capacity claims must also be dismissed because Department of Corrections officials sued in their official capacities are not "persons" capable of being sued under section 1983.[44]

We dismiss official capacity claims against Unit Manager Faubert, Counselor Wright, Coordinator Bean, and Superintendent Sorber with prejudice.

### B. We dismiss claims against Superintendent Sorber and Coordinator Bean in their individual capacities.

The Commonwealth moves to dismiss the claims against Superintendent Sorber and Coordinator Bean in their individual capacities because Mr. Houser has not alleged their personal involvement in the alleged retaliation.[45] We agree with the Commonwealth.

Mr. Houser must be able to truthfully plead Superintendent Sorber and Coordinator Bean had personal involvement in depriving him of his constitutional rights under section 1983.[46] Mr. Houser may not rely solely on a *respondeat superior* theory of liability. He must allege facts to show Superintendent Sorber's and Coordinator Bean's personal involvement in the alleged

misconduct.⁴⁷ Personal involvement can be shown through allegations of personal direction, actual knowledge, and acquiescence and must be pleaded with particularity.⁴⁸

Mr. Houser does not allege Superintendent Sorber's personal involvement in denying Mr. Houser a job at the prison in retaliation for his testimony in the *Reid* class action. Mr. Houser alleges Superintendent Sorber "did nothing" to address the denial of employment and acquiesced to "fellow workers," including Unit Manager Faubert and Counselor Wright, but does not allege facts supporting these conclusory allegations.⁴⁹

Mr. Houser alleges he tried to speak with Superintendent Sorber who allegedly said Unit Manager Faubert "has to give [Mr. Houser] a job" but no job resulted. Judge Robreno already dismissed claims against Superintendent Sorber based on this allegation.⁵⁰ Mr. Houser does not allege Superintendent Sorber's personal involvement in retaliatory conduct for his testifying at the fairness hearing in *Reid*. Mr. Houser also alleges he complained to Superintendent Sorber about the prison laundry damaging his clothes but did not receive a response. This is not a constitutional violation and does not allege how Superintendent Sorber's inaction regarding a complaint about the laundry has anything to do with retaliating for his testimony at the fairness hearing in *Reid*.

Mr. Houser's allegations about Coordinator Bean are similarly deficient. His main complaint regarding Coordinator Bean is her response to Mr. Houser's requests for employment by referring him to Unit Manager Faubert and referring to his medical status of sedentary work as limiting employment opportunities. But these are not constitutional violations. He does not allege Coordinator Bean denied him employment in retaliation for his testimony at the class action fairness hearing in *Reid*. There are no allegations Coordinator Bean even knew of his testimony in *Reid*.

### III. Conclusion

We grant the four state actors' partial motion to dismiss. Mr. Houser already dismissed his claims against them in their official capacity. Mr. Houser now twice failed to plead the individual involvement of Coordinator Bean or Superintendent Sorber in the alleged First Amendment retaliation. We dismiss his claims against the state actors in their official capacity with prejudice. We dismiss Coordinator Bean and Superintendent Sorber without prejudice. We will now proceed into discovery on the First Amendment retaliation claims against Manager Faubert and Coordinator Wright.

---

[1] ECF No. 26 at 32 (using the pagination assigned to the CM-ECF docketing system). Mr. Houser seeks money damages including punitive damages against the Defendants. *Id.* at 22.

[2] *Id.* at 33–34.

[3] *Id.* at 35–36.

[4] *Id.*

[5] *Id.* at 35.

[6] *Id.* at 1. Mr. Houser identifies the case as *Anthony Reid, et al. v. Wetzel, et al.*, No. 18-176 (M.D. Pa.) then pending before the Honorable John E. Jones, III. In October 2021, Chief Judge Brann reassigned the matter to the Honorable Cristopher C. Conner. We take judicial notice of the public docket in *Reid*. The *Reid* case, filed in January 2018, is a class action complaint challenging the Commonwealth's practice of holding death-sentenced prisoners in solitary confinement as violating the Eighth and Fourteenth Amendments. *See* ECF No. 1. Mr. Houser is a class member. Judge Jones preliminarily approved a class settlement in November 2019. ECF No. 48. Mr. Houser is one of many class members who objected to the proposed settlement. ECF No. 96. Judge Jones held a fairness hearing on the proposed class settlement on March 16, 2020 at which Mr. Houser testified over Zoom from SCI-Phoenix. ECF No. 145. Judge Jones granted the parties' joint motion for final approval of the class action settlement on April 9, 2020. ECF No. 144. Under the parties' settlement agreement, the Capital Case Units of Pennsylvania's Department of Corrections will operate as a general population unit of exclusively death-sentenced prisoners and, among other changes, death-sentenced prisoners will be permitted to obtain jobs both on the unit and in some off-unit areas. *Id.* Mr. Houser moved to enforce the settlement agreement in the *Reid* action. ECF Nos. 184, 185. His motion in the *Reid* case is currently pending before Chief Magistrate Judge Mehalchick for a report and recommendation. *Id.*

---

[7] ECF No. 26 at 2–22.

[8] *Id.* at 2. Mr. Houser refers to some inmates "even quitting" and being rehired as "caucasions [sic]" possibly suggesting racial bias. But he does not allege racial bias or disparate treatment because of his race (he does not identify his race in his amended complaint).

[9] ECF No. 26 at 8-14, 17-22, 35–90.

[10] *Id.* at 2–22.

[11] *Id.*

[12] *Id.* at 16–22, ¶¶ 2, 8-14, 16-17, 25, 28-29.

[13] *Id.* at 16–22, ¶¶ 6–7, 15, 18-19, 21–23.

[14] *Id.* at 4, 7, 12–13, 18, 21-22.

[15] *Id.* at 4, 21

[16] Id. at 12.

[17] *Id.* at 12, 13, 18, 45, 51.

[18] *Id.* at 21, ¶ 28, 84, 86.

[19] *Id.* at 21, ¶ 29.

[20] *Id.* at 22.

[21] *Id.*

[22] *Id.* The Department of Corrections' Policy Statement on Inmate Compensation informs us an inmate removed from a work assignment is eligible for "General Labor Pool" or "GLP" compensation or a different work assignment. https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/816%20Inmate%20Compensation.pdf. Mr. Houser does not allege how placement on this type of pay is a constitutional violation.

[23] ECF No. 26 at 5.

[24] *Id.* at 7.

[25] *Id.* at 8.

[26] *Id.* at 18, ¶ 15

---

[27] *Id.* at 19.

[28] *Id.* at 19, ¶ 20.

[29] *Id.* at 19–20, ¶¶ 22, 24, 25.

[30] *Id.* at 20, ¶ 25.

[31] 42 U.S.C. § 1983.

[32] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

[33] *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Section 1983 provides in relevant part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …." 42 U.S.C. § 1983.

[34] ECF No. 28.

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[36] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013) (italics in original)).

[37] *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) and citing *Higgs*, 655 F.3d at 339).

[38] *Yogt,* 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[39] ECF No. 20.

[40] ECF No. 26 at 22 (emphasis added). Mr. Houser also sought to add as defendants "Delliponti, Deputy Terra, and Major Terra." *Id.* We denied Mr. Houser's request to add additional defendants made without specific allegations or claims against them without prejudice to be renewed consistent with a scheduling order following Defendants' answer and our initial pretrial conference. ECF No. 27.

---

[41] *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 309–10 (3d Cir. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

[42] *Washington v. Gilmore*, No. 21-2876, 2022 WL 1073873, at *2 (3d Cir. Apr. 11, 2022) (per curiam).

[43] *See Downey*, 968 F.3d at 310; *see also*, 42 Pa. Cons. Stat. § 8521 (reserving Eleventh Amendment immunity).

[44] *See Will v. Michigan Dep't of Stat Police*, 491 U.S. 58, 71 (1989) (neither a State nor its officials acting in their official capacities are "persons" under section 1983).

[45] ECF No. 28 at 11-12.  The Commonwealth moves for dismissal of the individual capacity claims against Superintendent Sorber and Coordinator Bean only. Claims against Unit Manager Faubert and Counselor Wright in their individual capacities will go forward.

[46] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

[47] *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207).

[48] *Rode*, 845 F.2d at 1207.

[49] ECF No. 26 at 19, ¶ 20.

[50] ECF No. 20 at fn. 2.